UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SEAN MICHAEL YOUNG,

                   Plaintiff,

v.

WISCONSIN DEPARTMENT OF CORRECTIONS DIVISION OF COMMUNITY CORRECTIONS, JASON POPP, SOLEN RICHBERGER, ROXANNE SMITH, KRYSTAL POLAKOWSKI, and JANE DOE POLYGRAPH EXAMINER,

                   Defendants.

Case No. 23-CV-1200-JPS

**ORDER**

**1.    INTRODUCTION**

On September 11, 2023, Plaintiff Sean Michael Young ("Young"), who proceeds pro se and is currently subject to extended supervision pursuant to a state criminal conviction, filed a complaint alleging that the Wisconsin Department of Corrections Division of Community Corrections ("DOC"), Jason Popp ("Popp"), Solen Richberger ("Richberger"), Roxanne Smith ("Smith"), Krystal Polakowski ("Polakowski") (collectively for purposes of this Order, "Defendants"), and a Jane Doe polygraph examiner (the "Examiner") violated his constitutional rights and federal law during his extended supervision. ECF No. 1. Plaintiff paid the filing fee, ECF No. 1, and, apparently, attempted to effect service on Defendants himself. *See* ECF No. 9. Counsel from the Wisconsin Department of Justice appeared on September 22, 2023 for all Defendants except the Examiner. ECF Nos. 6, 7.

Currently before the Court are various motions and filings by both Young and Defendants. The Court first briefly explains the facts in Young's

complaint and outlines the pending motions. Then, based on the submissions in this case, the Court will: (1) grant Defendants' motion to screen the complaint, (2) screen the complaint, and (3) finding that the complaint appears to raise issues more properly addressed on a petition for habeas corpus, dismiss Young's claims without prejudice.

2.  FACTUAL AND PROCEDURAL BACKGROUND

    2.1    Factual Allegations and Requested Relief

It appears that Young is on extended state supervision with the DOC for his underlying state criminal conviction. ECF No. 1 at 3–4 (noting Young was released from prison in July 2021).[1] As a condition of his extended supervision, Young made regular visits to his assigned probation officers, Richberger and, in Richberger's absence, Smith. *Id.* Young made a request to Richberger that the frequency of his supervision be reduced—a request that Richberger's supervisor, Popp, later told Young had been conditionally approved. *Id.* at 4–5.

However, Young avers, Popp specified that the reduction in frequency of Young's supervision visits depended on Young passing a lie detector test. *Id.* at 5. Young submitted to the polygraph test. *Id.* at 6. During that test, he apparently made a comment to the Examiner about the outfit she was wearing. *Id.* at 7. Popp then told Young that he would be taken into custody—not because he failed the polygraph, but because of his comment to the Examiner. *Id.* (Young alleging that Popp told him he was being "being locked up for . . . 'solicit[ing] the . . . [E]xaminer while she administered the

---

[1] A search of Young's name on the Wisconsin Offender Locator similarly indicates that he was released on extended supervision in July 2021 after serving a term of incarceration for a 2009 conviction. He was convicted of using a computer to facilitate a child sex crime and is required to register as a sex offender. *See* Offender Locator, Wis. Dep't of Corrections, *available at* https://appsdoc.wi.gov/lop/ (last visited Nov. 20, 2023).

lie D[e]tector test to [him].'") He was frisked and then booked[2] into the Waukesha County Jail, where he was held for six days[3] and during which time he engaged in a food and liquid strike. *Id.* at 8.

When Young was released, he reported as directed to Richberger. *Id.* at 8. At that time, he was "given a *new* set of Rules of Supervision []with only ONE additional rule *added*," specifying that he "shall not comment or act inappropriately towards DOC staff or our providers including but not limited to commenting on their appearance, attire, or engaging in sexually inappropriate language/behavior." *Id.* (emphasis added).[4]

Young challenges the above events as violating the First, Fourth, and Eight Amendments, as well as miscellaneous other statutes and rules. ECF No. 1 at 11–12 (characterizing claims as "Freedom of Speech," "Abuse of Power," "Unlawful[] Seiz[ure]," "False Imprisonment," "Kidnapping," "Cruel and Unusual Punishment," "Torture," and "Crimes Against Humanity"). For relief, he wants $7 million in monetary damages ("[a]

---

[2]Polakowski and Popp transported Young to the Waukesha County Jail. ECF No. 1 at 8. The Court discerns no other allegations against Polakowski in the complaint besides that she participated in this transport.

[3]Popp refers to this period of incarceration as a "PO Hold." ECF No. 1 at 9. "Law enforcement has the authority to detain persons on probation and place them on a 'hold' pending charges for revoking the conditions of their probation." *Cunningham v. Kenosha County*, No. 23-CV-291-PP, 2023 WL 4976167, at *4 (E.D. Wis. Aug. 3, 2023) (citing *Johnson v. Sondalle*, 112 Fed. App'x 524, 527 (7th Cir. 2004)).

[4]Based on Young's choice of language, it seems that he is asserting that this condition was added only *after* he was incarcerated and jailed for allegedly soliciting the Examiner, i.e., that he did not have notice of this condition before the polygraph test, or that the condition was invalid. Requiring him to submit to a polygraph test was probably permissible, on the other hand. *See* Wis. Stat. § 301.132(2) ("The department may require a sex offender to submit to a lie detector test when directed to do so by the department . . . as a condition of a sex offender's . . . extended supervision . . . .").

million dollars for each day [he] had to endure emotional, financial, mental, physical and spiritual 'pain and suffering' while on a hunger and liquid strike at the Waukesha County Jail"), as well as for Defendants to be terminated from their employment (or, in the case of the Examiner, her contract with DOC) and to be criminally prosecuted. *Id.* at 12–13. As explained further below, he also requests immediate injunctive relief requiring that DOC change the office to which he reports for extended supervision. ECF No. 5 at 1.

It appears that since his six-day incarceration, Young has been taken back into custody. In a filing dated October 26, 2023, Young states that he was again "locked up on a PO hold" on September 21, 2023 and is currently being held, again at the Waukesha County Jail, pending disposition of that hold. ECF No. 14 at 1; *see also* ECF No. 9 at 1 ("Plaintiff . . . is currently incarcerated in the Waukesha County Jail."). The Court has been unable to locate public records about the "PO hold" that began on September 21, 2023, and related proceedings, so it is unclear what the precise basis for the hold is—but it seems to be related to a potential revocation of Young's extended supervision due to the above-summarized behavior (as opposed to some unrelated or new charge). *See* ECF No. 14 at 2 (referencing a "prelim[inary] revo[cation] hearing" and a scheduled "final revocation hearing"). Young avers that, at a preliminary hearing on October 19, 2023, he was charged with four alleged violations (Young refers to them as "four false allegations") and two were dismissed. *Id.* He is scheduled for a "final revocation hearing" on November 29, 2023. *Id.* He theorizes that his extended supervision was revoked and he was taken back into custody in retaliation for filing this case. *Id.* He further states his intention to add three new defendants: the new probation officer to whom his supervision has

been reassigned, Jake Mueller; Mueller's supervisor Tammy Caputa; and Caputa's supervisor Karen Schmitz. *Id.* at 3.[5]

### 2.2 Young's Attempt at Service

In an unrelated motion, Young states that "on Wed. Sept. 13, 2023, [he] went to the [DOC] office on 1900 Pewaukee Rd. to serve the Defendants . . . a copy of the summon[s] and complaint." ECF No. 5 at 2. Young represents that Popp accepted this material on his own behalf and on behalf of Richberger, Smith, and Polakowski, but declined to accept it on the Examiner's behalf. *Id.* Young then sent the Examiner's copy "along with Lance Wiersma's[6] copy to his office" via certified mail. *Id.*

Defendants agree that Young attempted service on this date by going to the DOC office in Waukesha, but tell a slightly different story, stating that "Young left the summons and complaint at the front desk in the lobby." ECF No. 9 at 2. "Young did not enlist anyone else to serve the summons and complaint." *Id.* Defendants have indicated to Young and to the Court that this is insufficient service of process "because Young, a party to the case, himself attempted to serve the summons and complaint." *Id.* at 1.

---

[5]The Court will consider the factual allegations in Young's filing dated October 26, 2023 as part of the complaint. *See McDonald v. Brown*, No. 03 C 4568, 2004 WL 2106604, at *2 (N.D. Ill. Sept. 17, 2004) ("[F]or a *pro se* plaintiff the court considers the allegations contained in all documents filed with the court.") (citing *Gutierrez v. Peters,* 111 F.3d 1364, 1367 & n. 2 (7th Cir. 1997) and *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992)).

[6]Lance Wiersma is the Administrator of the DOC Division of Community Corrections. *See* Division of Community Corrections, Wis. Dep't of Corrections, *available at* https://doc.wi.gov/Pages/AboutDOC/CommunityCorrections/Default.aspx (last visited Nov. 20, 2023).

### 2.3 Pending Motions

Defendants have filed a motion asking the Court to screen Young's complaint notwithstanding his payment of the filing fee, pursuant to 28 U.S.C. § 1915(e)(2). ECF No. 10. Defendants, complying with the Court's pretrial procedures, ECF No. 8, have also filed an executive summary of their proposed motion to dismiss in this case. ECF No. 9. That executive summary indicates that Defendants intend to move to dismiss Young's complaint both for insufficient service and for failure to state a claim. *Id.*

As for Young, he has filed four motions. Alongside his complaint, he submitted a motion asking the Court to "assign a sheriff" to serve Defendants. ECF No. 2. On the same day, he also filed a motion "request[ing] the Court['s] permission . . . to have [DOC] disclose the audio and video footage" of the polygraph exam and of Young "arriving at the parole office . . . up until he was placed into custody and transferred to the Waukesha County Jail." ECF No. 3 at 1. A few days after filing his initial complaint, he moved for an "immediate injunction" asking that the Court schedule a hearing between him and DOC "to discuss [his] extended supervision be[ing] immediately transferred" from the current DOC office in Waukesha that administers his extended supervision "to another probation and parole office in another county in Wisconsin." ECF No. 5 at 1. Finally, Young recently filed a motion, dated October 26, 2023, for a continuance in the proceedings in this case. ECF No. 15. As the basis therefor, he reiterates that he is currently incarcerated and is subject to ongoing state revocation proceedings, and further states that the effects of incarceration on his mental and physical health are impacting his ability to litigate this matter. *Id.*

**3. MOTION TO SCREEN AND SCREENING**

**3.1 Defendants' Motion to Screen Plaintiff's Complaint**

The Court first turns to Defendants' motion to screen Young's complaint. ECF No. 10. "[D]istrict courts have the power to screen complaints filed by all litigants . . . regardless of fee status." *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (citing 28 U.S.C. § 1915(e)(2)(B) and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997)). The purpose of such screening is to identify claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense. This is so even when the plaintiff has paid all fees for filing and service . . . .").

Here, notwithstanding Young's payment of the filing fee, the Court will grant Defendants' motion and screen the complaint. While screening is emphatically *not* the place for the Court to develop Defendants' arguments for dismissal for them, *see* ECF No. 10 at 2 (arguing, without citation to authority or analysis, that "Plaintiff has failed to state a claim for relief against any Defendant in his or her official or individual capacity, and the [c]omplaint does not bring any cognizable cause of action"),[7] the Court finds that Young's complaint merits screening because it is not clear whether Young has brought it through the appropriate legal vehicle. His claims may be more appropriate for resolution through a petition for

---

[7] Nor does the Court encourage the filing of similar "motions to screen" in other cases such as this, where facts that would clarify whether and how the case may proceed in this federal forum (here, the fact that Young is subject to ongoing revocation proceedings) were within Defendants' control.

habeas corpus, rather than a civil rights action, but in either instance, the complaint as written calls into question several key points underpinning the Court's ability to hear the case.

### 3.2 Screening the Complaint

At screening, the Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, Fed. R. Civ. P. 12(h). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

Young's lawsuit challenges the circumstances that led to his six-day incarceration back in July 2023 (and presumably his current confinement and pending revocation proceedings as well).[8] For this treatment, he seeks monetary damages from Defendants and equitable relief in the form of employment and criminal consequences for the DOC staff involved in his confinement. He does not explicitly seek release from confinement, nor does he seek declaratory relief. His motion for injunctive relief does seek a change in his extended supervision, however.

This set of circumstances raises the question of whether his claims are properly brought as civil rights claims under 42 U.S.C. § 1983, through

---

[8]Young filed his complaint after he was released from the six-day confinement but before he was reincarcerated on September 21, 2023. *See* ECF No. 1 at 8; ECF No. 14 at 2. Obviously, Young couldn't use the complaint to try and challenge his present confinement because it hadn't yet occurred.

a petition for habeas corpus, or both. "The general rule is that a plaintiff may not proceed on claims under 42 U.S.C. § 1983 that challenge the fact, duration or validity of his custody unless he first obtains a ruling that his conviction or sentence has been reversed, expunged or invalidated in state court." *Jackson v. Lemmon*, No. 1:16-CV-2551-WTL-DKL, 2017 WL 11547938, at *2 (S.D. Ind. Feb. 2, 2017) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Preiser v. Rodriguez*, 411 U.S. 475 (1973)). "Challenges to conditions of confinement (such as pollution in the prison or deliberate indifference to serious medical needs) fall under § 1983. . . . Attacks on the fact or duration of the confinement come under [the habeas statutes] § 2254 [or § 2241]." *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003) (citing *Preiser*, 411 U.S. at 500, and *Moran v. Sondalle,* 218 F.3d 647, 650–51 (7th Cir. 2000) (per curiam)). "For [individuals subject to state supervision such as] parolees, the question is more metaphysical, because the 'conditions' of parole *are* the confinement. Requirements that parolees [comply with specific conditions] are what distinguish parole from freedom." *Id.* Where a litigant "wants relief from one of the restrictions imposed by his parole, . . . [those] contentions should . . . [be] presented in a collateral attack." *Id.* at 579–80 (citations omitted).

Here, Young believes that he is entitled to monetary damages and equitable relief because Defendants violated his constitutional rights in administering the conditions of his supervision in a way that resulted in his incarceration. This theory constitutes an "attack[] on the fact . . . of [his] confinement." *Id.* at 579. Even though Young does not explicitly seek release or an order invalidating the basis of his confinement, instead seeking damages for each day he spent in confinement, what he essentially wants is relief from the conditions of his supervision—namely, the six-day

confinement (and presumably also his current custody) that resulted from his alleged violations of the terms of his extended supervision. *See Hanson v. Heckel*, 791 F.2d 93, 96–97 & n.7 (7th Cir. 1986) (explaining that deciding whether a claim should proceed as a § 1983 action or a habeas corpus petition depends on "the nature of the claim" and not "the relief sought," and collecting cases consistent with this holding).

The only conclusion that the Court can draw from Young's description of his confinement and the circumstances that led to it is that he views the confinement as invalid and, accordingly, wants compensation and equitable relief for having been subjected to it. Indeed, it would not make sense to read Young's complaint as conceding that his confinement was valid but nonetheless seeking damages, and retributive employment and criminal action against the individuals involved, for how it occurred. Similarly, he does not seem to be raising a constitutional challenge to any particular term of his supervision (for example, the requirement that he make regular visits with his probation officer, or submit to a polygraph test), but rather the *outcome* of an alleged violation of those terms of supervision. *See Clayton-El v. Fisher*, 96 F.3d 236, 243 (7th Cir. 1996) (allowing plaintiff to proceed on § 1983 claims where "[d]eciding these claims does not require a federal court to decide whether the disciplinary process against [him] reached the correct result").

Damages would only be available to Young if his confinement for allegedly violating his conditions of supervision were rendered invalid. *See Heck*, 512 U.S. at 486 ("[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff

Page 10 of 16
Case 2:23-cv-01200-JPS    Filed 11/20/23    Page 10 of 16    Document 16

can demonstrate that the conviction or sentence has already been invalidated."). Accordingly, at this juncture, it appears that Young should first present his constitutional claims in a habeas corpus petition. *See Williams*, 336 F.3d at 579–80.[9]

Ordinarily, "collateral attacks disguised as civil rights actions should be dismissed without . . . prejudice[,]" thus allowing the plaintiff to decide whether to file a habeas corpus petition. *Williams*, 336 F.3d at 580; *see also Earls v. Fuchs*, No. 20-CV-635-PP, 2021 WL 1626481, at *2 (E.D. Wis. Apr. 27, 2021), *certificate of appealability denied*, No. 21-1799, 2021 WL 5102807 (7th Cir. Sept. 10, 2021) (explaining that courts may in some instances recharacterize pro se filings as habeas petitions, but since doing so "can have serious consequences," courts should decline to do so without notifying and warning the pro se litigant first (quoting *Castro v. United States*, 540 U.S. 375, 377 (2003)). The Court will do so here.[10] Young is free

---

[9]Even if Young *is* trying to challenge a term of his extended supervision rather than the outcome of its implementation, the correct vehicle to bring those claims is still a habeas corpus petition. *See Jackson*, 2017 WL 11547938, at *1–2 (rejecting plaintiff's claims that various terms of his parole are constitutionally invalid as "direct[] or indirect[] attacks [on] the conditions" and not properly raised through a § 1983 case); *accord Drollinger v. Milligan*, 552 F.2d 1220, 1224 (7th Cir. 1977).

[10]Even if Young's complaint was correctly brought at this time under § 1983, it would still present two additional problems. First: since Young is involved in ongoing state criminal revocation proceedings, any civil rights action challenging those proceedings is subject to a stay or dismissal pursuant to *Younger v. Harris*, 401 U.S. 37, 45 (1971). *See Henry v. Whiteaker*, No. 21-CV-137-BBC, 2021 WL 1667659, at *1 (W.D. Wis. Apr. 28, 2021) (applying *Younger* abstention where a plaintiff "allege[d] that he [was] being held for alleged violations of his probation or parole" but "revocation proceedings have not been completed"). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) (citing *Younger*, 401 U.S. at 43–44).

to challenge his state revocation proceedings via a habeas corpus petition, keeping in mind the below directives.

First, Young should note the proper statute under which to proceed. Individuals wishing to challenge *completed* state criminal proceedings may challenge their incarceration under 28 U.S.C. § 2254. *See, e.g.*, *Trepania v. Manning*, 21-cv-39-jdp, 2021 WL 1946397 (W.D. Wis. Apr. 27, 2021) (petitioner who was revoked on extended supervision filed petition for habeas corpus pursuant to 28 U.S.C. § 2254). Meanwhile, individuals who are held in state custody for any reason other than a conviction—for example, pretrial or pre-adjudication confinement—may challenge their incarceration under 28 U.S.C. § 2241. *Jacobs v. McCaughtry*, 251 F.3d 596, 597 (7th Cir. 2001) (noting that a habeas petition may be brought pursuant to § 2241 by petitioners held for "some other reason, such as pre-conviction custody") (citing *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000)). Young

---

Second, each Defendant is likely immune from suits for damages and accordingly subject to dismissal from the action. 28 U.S.C. § 1915(e)(2)(B)(iii). The individual Defendants—Popp, Richberger, Smith, Polakowski, and the Examiner, as well as the other DOC personnel Young seeks to add, *see supra* Section 2.1—may all be "absolutely immune from [a] suit[] challenging conduct intimately associated with the judicial phase of the criminal process." *Tobey v. Chibucos*, 890 F.3d 634, 649 (7th Cir. 2018) (collecting cases). Acts that are "'inexorably connected with the execution of parole revocation procedures and are analogous to judicial action' are entitled to absolute immunity." *Smith v. Gomez*, 550 F.3d 613, 619 (7th Cir. 2008) (quoting *Walrath v. United States*, 35 F.3d 277, 282 (7th Cir. 1994)). On the other hand, actions by probation officers that do not have an "integral relationship with the judicial process" are not entitled to absolute immunity. *Johnson v. Root*, 812 F. Supp. 2d 914, 921 (N.D. Ill. 2011) (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)). The individual Defendants' actions appear to fit into the former category.

For its part, the DOC itself is not and cannot be properly named as a defendant because, as a state agency, it is not subject to civil rights suits for damages—first, because it is not a "person" within the meaning of § 1983 and, second, because states and state agencies have sovereign immunity from suit. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (collecting cases on each point).

would use different forms to pursue relief under § 2241 versus § 2254; both forms are available on the Eastern District of Wisconsin's website.

In either case, Young must exhaust his state court remedies—in other words, present his constitutional arguments at every level of the state court system. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991) (prohibiting district courts from addressing claims raised in a habeas petition "unless the state courts have had a full and fair opportunity to review them"). Also, Young should note that his requested monetary and equitable relief is not available on a habeas corpus petition. *See Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005); *see also Annamalai v. Laird*, No. 16-CV-524-DRH, 2016 WL 3213340, at *2 n.1 (S.D. Ill. June 10, 2016) ("Monetary relief is not available to a petitioner in a habeas action.") (citing *Waletzki v. Keohane*, 13 F.3d 1079, 1081–82 (7th Cir. 1994)).

For all these reasons, the Court will dismiss without prejudice Young's claims under the First, Fourth, and Eight Amendments, as well as his claims premised on "Freedom of Speech," "Abuse of Power," "Unlawful[] Seiz[ure]," "False Imprisonment," "Kidnapping," "Cruel and Unusual Punishment," "Torture," and "Crimes Against Humanity," ECF No. 1 at 11–12, which are not appropriate for resolution through a civil rights action at this time. Because the dismissal is without prejudice, Young remains free to bring his claims in a new § 1983 suit *after* his state revocation proceeding concludes, bearing in mind that he would be eligible for monetary relief if and only if he can show that his revocation was invalidated (for example, if all the allegations underlying the revocation proceedings were dismissed). *See Heck*, 512 U.S. at 486. If he files such a suit, he should also keep in mind the Court's notes, *see supra* note 10, regarding who is a proper Defendant.

4.  **OTHER MOTIONS**

In light of the Court's dismissal of this case, all four of Young's other pending motions will be denied as moot. The Court pauses to provide some notes on each motion. As to Young's motion for an order assigning a sheriff for service: Defendants are correct that Young's attempts at service were procedurally defective. Fed. R. Civ. P. 4(c)(2) (requiring that service be performed by a person "who is at least 18 years old *and not a party*" (emphasis added)). Defendants are also correct that defective service may be a basis for dismissal; to comport with due process,

> the plaintiff must effect proper service pursuant to Rule 4, even if the defendant has actual notice of the lawsuit. *See McMasters v. United States*, 260 F.3d 814, 817 (7th Cir. 2001). [While] the requirement of formal service is not intended to provide a defendant who has actual knowledge [of the] lawsuit . . . an excuse for ignoring service, . . . a defendant who receives actual notice of a lawsuit has the right to insist on strict adherence to procedural formalities.

*Strabala v. Zhang*, 318 F.R.D. 81, 90 (N.D. Ill. 2016). If Young refiles a civil rights lawsuit at any time in the future, he should keep these rules in mind.

As to Young's motion to disclose material related to his complaint, ECF No. 3, it is unnecessary to file such a motion with the opening complaint. Such requests are typically withheld until the discovery process begins (after screening) and are typically made to the opposing party and resolved without the involvement of the Court.

Young's motion for an immediate injunction, ECF No. 5, which asks the Court to reassign responsibility for his extended supervision to a different DOC location, is inappropriate. Even if this case were suitable for resolution as a civil rights action at this time, it would be inappropriate under the principles of federalism for this federal court to instruct a state executive branch agency how to conduct its business. To the extent Young

Page 14 of 16

Case 2:23-cv-01200-JPS   Filed 11/20/23   Page 14 of 16   Document 16

seeks a hearing on this issue, ECF No. 5 at 1, that request is also denied, as nothing that could be said in a hearing would change this conclusion.

Young's motion for a continuance in this matter will be denied as moot because the case is being dismissed.

**5. CONCLUSION**

For the reasons and on the terms stated above, Young's claims under the First, Fourth, and Eight Amendments, as well as his claims premised on "Freedom of Speech," "Abuse of Power," "Unlawful[] Seiz[ure]," "False Imprisonment," "Kidnapping," "Cruel and Unusual Punishment," "Torture," and "Crimes Against Humanity," ECF No. 1 at 11–12, are dismissed without prejudice, and this action is dismissed.

Accordingly,

**IT IS ORDERED** that Defendants Wisconsin Department of Corrections Division of Community Corrections, Jason Popp, Solen Richberger, Roxanne Smith, and Krystal Polakowski's motion to screen Plaintiff Sean Michael Young's complaint, ECF No. 10, be and the same hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Sean Michael Young's motion for an order assigning a sheriff for service, ECF No. 2, be and the same hereby is **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff Sean Michael Young's motion to disclose, ECF No. 3, be and the same hereby is **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff Sean Michael Young's motion for an immediate injunction, ECF No. 5, be and the same hereby is **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff Sean Michael Young's motion for a continuance, ECF No. 15, be and the same hereby is **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of November, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.